<div style="text-align:center">

**COMMONWEALTH OF KENTUCKY**
**JEFFERSON COUNTY CIRCUIT COURT**
CASE NO. _____
DIVISION \_\_\_
*ELECTRONICALLY FILED*

</div>

**KIMETTA SUBLETT**                                                                                           **PLAINTIFF**

v.

**MASONIC HOMES OF KENTUCKY, INC.**                                                      **DEFENDANT**
**3761 JOHNSON HALL DRIVE**
**MASONIC HOME, KY 40041**

        **SERVE:** William A. Buckaway, Jr., Registered Agent
                1406 One Riverfront Plaza
                Louisville, KY 40202

<div style="text-align:center">

**COMPLAINT**
*Jury Trial Demanded*

</div>

     Comes the Plaintiff, Kimetta Sublett (hereinafter "Ms. Sublett" or "Plaintiff"), by and through her counsel, and for her complaint against Defendant Masonic Homes of Kentucky, Inc., (hereinafter "MHK" or "Defendant"), states as follows:

<div style="text-align:center">

**PARTIES**

</div>

1. MHK is a domestic corporation doing business throughout the Commonwealth of Kentucky with its principal office in Louisville, Kentucky.

2. Ms. Sublett is, and at all times relevant hereto, has been, a resident of Louisville, Jefferson County, and the Commonwealth of Kentucky. Ms. Sublett is a former employee of Defendant MHK. At all relevant times, Ms. Sublett was a qualified individual with a disability within the meaning of the Kentucky Civil Rights Act and the

Americans with Disabilities Act and a member of a protected age class under the Kentucky Civil Rights Act.

## JURISDICTION AND VENUE

3. Ms. Sublett's causes of action are brought pursuant to the Kentucky Civil Rights Act, KRS 344 *et seq.* and the Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq.*, and as amended in the Americans with Disabilities Act Amendments Act of 2008.

4. Jurisdiction is proper in the Jefferson Circuit Court pursuant to KRS 23 A 010(1) and KRS 344.450.

5. Venue in this action is proper in the Jefferson Circuit Court pursuant to KRS 452.450 and KRS 452.460(1), because Plaintiff was employed by Defendant in Jefferson County, Kentucky and the injury arising from these events was done to the Plaintiff in Jefferson County, Kentucky.

6. All required administrative remedies have been exhausted. In September of 2018, Plaintiff filed a complaint with the Equal Employment Opportunity Commission, alleging the violations set forth herein related to disability discrimination. On August 15, 2019, the EEOC issued a Notice of Right to Sue, a copy of which is attached hereto as Exhibit A. This Complaint is timely filed within 90 days of the Notice of Right to Sue. The Kentucky Civil Rights Act does not require exhaustion of administrative remedies.

7. At all times material to this action, Ms. Sublett was an "employee" as defined by KRS Chapter 344 and 42 U.S.C. § 12111(4), and MHK was an "employer" as defined in KRS Chapter 344 and 42 U.S.C. § 12111(5).

## FACTUAL ALLEGATIONS

8. For over a decade, Ms. Sublett was the Director of Pillars Assisted Care Center (PACC), a personal care facility owned and operated by MHK. In this capacity, she was in charge of an intermediate level-of-care facility and its staff charged with providing care for the elderly and infirm.

9. Ms. Sublett's performance evaluations were consistently good, such that she was not even required to undergo formal evaluation for several of her years spent as Director. There were no serious complaints or criticisms of her work up through 2017, and the state's inspections of the facility always yielded good results, involving no more than minor correction requirements.

10. During her time at PACC, Ms. Sublett was diagnosed with severe emphysema. In January of 2018, Ms. Sublett disclosed a medical diagnosis of severe emphysema to her employer through the MHK Director of Human Resources, Paula Walker.

11. The disability was also disclosed to Brandy Muir, the Human Resources representative in Ms. Sublett's new work site. At other points in her employment, Ms. Sublett also disclosed her diability to: Sheila Hammond, Debbie Broyles, Jackie Wait, Gertrude Reed, Ellen Linker, Lisa Buschkoetter, Jude Moore, Mary McCage, Tim Morrow, Betty Davis, Donna Lay, Barbara Winfrey, David Smith, Judy Parsley, Regina Hensley, Candace Jones and Catherine Rusch. Ms. Sublett's disability was fairly well-known in the Masonic Homes community.

12. By January of 2018, Ms. Sublett was over the age of forty.

13. In the early spring of 2018, Masonic Homes took away Ms. Sublett's office and would not tell her when she could expect to have her workspace restored.

14. In March or April of 2018, Ms. Sublett received a call from MHK Chief Operating Officer J Scott Judy informing her that the company was "ready to let her know" what it had planned for her and requesting an in-person meeting. Up to that point, nobody had discussed a job change with Ms. Sublett at all.

15. In the meeting, Mr. Judy and Gary Marsh advised Ms. Sublett that she was being pulled from her Director position at PACC to serve as Resident Services Manager at Miralea, a different MHK facility. This change was a demotion, which the executives attempted to palliate by adding $10,000.00 in annual base salary pay to the Resident Services Manager position. Ultimately, that meant a slight raise of hourly pay from $32.36 to $34.06, but with the divestment of the superior title, authority, and advancement opportunities.

16. Ms. Sublett's replacement in the Director position, Chris Just, was a non-disabled man who is substantially younger than Ms. Sublett and who had only been with the company since February of 2018. Prior to his employment with Masonic Homes, Mr. Just was a consultant for Merritt Search Group, with no apparent experience directing a facility such as PACC. Mr. Just was given an assistant, broader authority and power, and likely greater pay than Ms. Sublett, who was relegated to the lesser position at Miralea as stated.

17. Ms. Sublett described the limitations of her disability to the Masonic Homes workers, in particularly to her Miralea supervisor Mike Truax, as limitations that barred long periods of standing (especially in hot conditions), lifting, and other acts of heightened physical exertion. Ms. Sublett specified that these activities interfered with her major life activities and/or bodily functions of lifting, walking, breathing, and remaining conscious and reasonably oriented.  It was never communicated to Ms. Sublett that doing any of these things was an essential function of her job, such that the known disability disqualified her

4

for it. Still, MHK's supervisors continued to subject her to the unmitigated working conditions. In this way, Masonic Homes refused a reasonable accommodation without engaging in the required interactive process at all.

18. Ms. Sublett timely protested these accommodation failures. She told Mr. Truax that the physical exertion was placing her in medical danger and that she needed to be excused from the exertion. Mr. Truax said he would help Ms. Sublett with completing the physical tasks, but he did not thereafter actually relieve her of the requirements. The demands for participation in activities that exceeded limitations imposed by Ms. Sublett's disability continued right up through her discharge.

19. Ms. Sublett also requested parking accommodations to make her physical navigation of the premises easier in light of the disability and its effects on major life activities and major bodily functions. Mr. Truax refused to accommodate that request in any manner, telling Ms. Sublett that "all staff are to park in specific areas, no exceptions."

20. MHK never articulated to Ms. Sublett any sort of hardship, let alone an undue hardship, in accommodating her needs related to emphysema.

21. The Miralea position was taken from Ms. Sublett soon thereafter when Masonic Homes decided to terminate her in the summer of 2018. The reason it gave Ms. Sublett was that it claimed Ms. Sublett used profanity about an employee.

22. Gertrude Reed, who witnessed the subject interaction, has verified to Ms. Sublett that no profanity occurred. Ms. Reed was never interviewed in connection with any investigation of the alleged incident by MHK.

23. MHK's agents presented Ms. Sublett with a performance improvement plan that contained false allegations about her work performance and behavior. MHK's agents

5

demanded that Ms. Sublett sign the document, even though the contents were false, and she refused. She was terminated, but the company continued to use her photograph and likeness on its promotional materials, including its website.

24. MHK's agents presented Ms. Sublett with a document that would release any claims against it, such as the ones set forth in this Complaint, and one of the incentives it offered was that the company would not oppose her unemployment insurance benefits if she signed the release. Ms. Sublett perceived this employment action as coercive and threatening, given that she was entitled to those benefits as an involuntarily separated worker who had not engaged in misconduct connected to the work. The threat of the loss of these subsistence benefits in the time it would take to litigate the benefits application, so soon after the sudden loss of her wage income, was extremely stressful to Ms. Sublett.

25. In the time since Ms. Sublett's discharge, MHK's descriptions of the reasons for her discharge have changed, and Defendant has not been able to articulate a consistent proffered basis for Ms. Sublett's termination.

## I. DISABILITY DISCRIMINATION

26. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

27. Plaintiff's claims against the Defendant arise under the Kentucky Civil Rights Act, Kentucky Revised Statutes Chapter 344, *et seq.*, and the Americans with Disabilities Act, 42 U.S.C. §§ 12101, et seq., and relate to her employment by Defendant.

28. Defendant is an employer within the meaning of the KCRA and the ADA.

29. The Plaintiff is a qualified individual with a disability within the meaning of the KCRA and the ADA.

30. Plaintiff is disabled, Defendant has a record of Ms. Sublett's disability, and Defendant regarded Plaintiff as disabled under the respective meanings of the KCRA and the ADA.

31. As described above, the Defendant repeatedly and willfully failed to provide the Plaintiff with reasonable accommodations to her disability, including, but not limited to, failing to engage in the interactive process at all.

32. Defendant further engaged in discriminatory behavior, including demotion, discipline, and ultimately termination, due to its bias against Plaintiff for her disability.

33. As a direct and proximate cause of the Defendant's actions described herein, Plaintiff has suffered from a loss of income and benefits, embarrassment and humiliation, emotional stress, and mental anxiety, for all of which she should be compensated.

34. Plaintiff is entitled to all relief, legal and equitable, available under the KCRA and the ADA.

## II. AGE DISCRIMINATION

35. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

36. Plaintiff is a worker over the age of forty. The circumstances alleged in this Complaint qualify Plaintiff for protection under the KCRA's age protections for that group.

37. Defendant is an employer within the meaning of the KCRA.

38. Plaintiff is informed and believes that her age has subjected her to adverse employment actions and discrimination, culminating in an unwarranted termination.

39. Plaintiff's younger worker counterparts have not received similar treatment. Plaintiff has been replaced by a substantially younger worker or workers.

40. Her unwarranted termination has further prevented Plaintiff from receiving fair opportunities to transfer and promote within Masonic Homes.

41. As a direct and proximate cause of Defendant's actions described herein, Plaintiff has suffered from a loss of income and benefits, embarrassment and humiliation, physical and emotional distress, and mental anxiety, for all of which she should be compensated.

42. Plaintiff is entitled to all relief, legal and equitable, available under the KCRA, including the award of damages and attorney's fees.

### III. RETALIATION

43. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

44. Plaintiff's claim against the Defendant arises under the KCRA and the ADA.

45. Plaintiff engaged in protected activity under the KCRA and the ADA by requesting accommodation for her disability and by making complaints to the Defendant, including complaints about its failure to accommodate her disability and discriminatory treatment, including her demotion.

46. Plaintiff was subjected to adverse actions by the Defendant because she engaged in activity protected under the KCRA and the ADA.

47. These adverse actions included, without limitation, being demoted, being forced to work outside her physical restrictions, being singled out for heightened scrutiny, having heightened and different standards applied to her performance and conduct, being falsely accused of misconduct, being presented with a performance improvement plan and told she had to admit to its false contents in order to remain employed, being refused full and fair investigation of false accusations of wrongdoing, being threatened with opposition to her unemployment benefits if she did not sign a release of her legal claims, and being terminated from her employment.

48. A reasonable employee in Plaintiff's position would have found the Defendant's actions materially adverse.

49. There exists a causal connection between the Defendant's materially adverse actions toward Plaintiff and her protected activity.

50. Defendant's conduct violated the KCRA's anti-retaliation provision, as well as the ADA's anti-retaliation provision. *See* KRS 344.280; *see also* 42 U.S.C. § 12203.

51. As a direct and proximate result of the Defendant's actions described herein, Plaintiff has suffered from a loss of income and benefits, embarrassment and humiliation, emotional stress, and mental anxiety, for all of which she should be compensated.

52. Plaintiff is entitled to all relief, legal and equitable, available under the KCRA and the ADA.

## PUNITIVE DAMAGES

53. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

54. Defendant has engaged in a pattern of conduct in the Commonwealth of Kentucky that regularly oppresses the Commonwealth's disabled employees.

55. Defendant has developed a pattern of singling out disabled employees for demotion and termination, as well as refusing to make reasonable accommodations.

56. Plaintiff is aware of at least one other MHK worker who experienced retaliation and protected-class discrimination by this Defendant.

57. Absent the deterrent effect of punitive damages, Defendant will continue to subject Kentucky workers to illegal retaliation and discrimination.

58. Defendant has engaged in a pattern of retaliation against employees that exercise their rights.

59. Defendant's actions were intentional, willful, and malicious. These actions were carried out with flagrant indifference to Plaintiff's rights, were effected with an awareness that the conduct would result in physical and emotional injury, and were specifically intended to subject Plaintiff to cruel and unjust hardship.

60. Defendant authorized or ratified the fraudulent, oppressive, and malicious conduct of its agents, or it should have anticipated the agents' fraudulent, oppressive, and malicious conduct.

61. As a result, Defendant's conduct justifies a judgment of punitive damages, as permitted by applicable law and due process, in an amount to be determined by a jury.

Wherefore, Plaintiff respectfully demands:

1. Judgment against Defendant;

2. Compensatory damages as authorized by the Kentucky Civil Rights Act, KRS Chapter 344, and the Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq.*, including, but not limited to, back pay wages and benefits, damages for mental and emotional distress, embarrassment, humiliation, personal indignity, apprehension about past, current, and future economic well-being, and physical pain and suffering, all of which were caused by Defendant's conduct;

3. Equitable relief to which she appears entitled, including reinstatement, promotion, front pay wages and benefits in lieu of reinstatement if reinstatement is deemed impracticable, and any appropriate injunctive relief;

4. Punitive damages;

5. Trial by jury;

6. Interest on her judgment as recoverable under the law;

7. Her costs and attorneys' fees as recoverable under the law;

8. Leave to amend this Complaint as the law and orders of the Court permit; and

9. Any and all other relief to which she may appear entitled.

                Respectfully submitted,

                *s/ Anna C. Beilman*
                Anna C. Beilman
                Robyn Smith
                John S. Friend
                Robert W. "Joe" Bishop
                6520 Glenridge Park Place
                Suite 6
                Louisville, Kentucky 40222
                502-425-2600

## VERIFICATION

I have read the foregoing statements and they are true and accurate to the best of my knowledge and belief.

*Kimetta Sublett*
KIMETTA SUBLETT

COMMONWEALTH OF KENTUCKY )
                         )ss
COUNTY OF JEFFERSON      )

Subscribed and sworn to before me by Kimetta Sublett this 12th day of September, 2019.

*Robyn Smith*
Notary Public
State at Large, Kentucky
My commission expires: 3-23-2023

AD7E4623-41A3-4F7D-9844-9813F92F749A : 000013 of 000016

EEOC Form 161-B (11/16)     **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

| To: | Kimetta Sublett<br>4114 Melda Lane<br>Louisville, KY 40219 | From: | Louisville Area Office<br>600 Dr Martin Luther King Jr Pl<br>Suite 268<br>Louisville, KY 40202 |
|---|---|---|---|

[ ]   On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 474-2018-01356 | Walter G. Boone,<br>Investigator | (502) 582-5839 |

(See also the additional information enclosed with this form.)

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

[X]   More than 180 days have passed since the filing of this charge.

[ ]   Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X]   The EEOC is terminating its processing of this charge.

[ ]   The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

[ ]   The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ]   The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Richard T. Burgamy,
Area Office Director

AUG 1 5 2019

(Date Mailed)

Enclosures(s)

cc:   Laurence Woods, III
Frost Brown Todd LLC
400 West Market Street
32nd Floor
Louisville, KY 40202

Robin Smith
BISHOP, FRIEND, SMITH & BEILMAN
5520 Glenridge Park Place
Suite 6
Louisville, KY 40222

Enclosure with EEOC
Form 161-B (11/16)

# INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.
If you also plan to sue claiming violations of State law, please be aware that time limits and other provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS** -- **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Courts often require that a copy of your charge must be attached to the complaint you file in court. If so, you should remove your birth date from the charge. Some courts will not accept your complaint where the charge includes a date of birth. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS** -- **Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION** -- **Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE** -- **All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months of this Notice**. (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

**NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA):** The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

**If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at** http://www.eeoc.gov/laws/types/disability_regulations.cfm.

"Actual" disability or a "record of" a disability (note: if you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability):

- **The limitations from the impairment no longer have to be severe or significant** for the impairment to be considered substantially limiting.
- In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities" now include the operation of major bodily functions**, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system.
- **Only one** major life activity need be substantially limited.
- With the exception of ordinary eyeglasses or contact lenses, **the beneficial effects of "mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.
- An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or **"in remission"** (e.g., cancer) is a disability if it **would be substantially limiting when active**.
- An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months**.

"Regarded as" coverage:
- An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).
- "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.
- The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively *BOTH* transitory (lasting or expected to last six months or less) *AND* minor.
- A person is not able to bring a failure to accommodate claim *if* the individual is covered only under the "regarded as" definition of "disability."

*Note: Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment. Beyond the initial pleading stage, some courts will require specific evidence to establish disability.* For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.

AOC-E-105  Sum Code: CI
Rev. 9-14

Commonwealth of Kentucky
Court of Justice    Courts.ky.gov

CR 4.02; Cr Official Form 1



**CIVIL SUMMONS**

Case #: **19-CI-005646**
Court: **CIRCUIT**
County: **JEFFERSON Circuit**

*Plantiff*, SUBLETT, KIMETTA VS. MASONIC HOMES OF KENTUCKY, INC., *Defendant*

TO: MASONIC HOMES OF KENTUCKY, INC.
3761 JOHNSON HALL DRIVE
MASONIC HOME, KY 40041

Memo: Registered Agent of Service exists.

The Commonwealth of Kentucky to Defendant:

You are hereby notified that a **legal action has been filed against you** in this Court demanding relief as shown on the document delivered to you with this Summons. **Unless a written defense is made by you or by an attorney on your behalf within twenty (20) days** following the day this paper is delivered to you, judgment by default may be taken against you for the relief demanded in the attached complaint.

The name(s) and address(es) of the party or parties demanding relief against you or his/her (their) attorney(s) are shown on the document delivered to you with this Summons.

/s/ Davis L. Nicholson
Jefferson Circuit Clerk
Date: **9/13/2019**

**Proof of Service**

This Summons was:

☐ Served by delivering a true copy and the Complaint (or other initiating document)

To: _____

☐ Not Served because: _____

Date: _____, 20 ____        Served By _____
                                    Title _____

Summons ID: 190060113564703@00000923168
CIRCUIT: 19-CI-005646 Certified Mail
SUBLETT, KIMETTA VS. MASONIC HOMES OF KENTUCKY, INC.



Page 1 of 1


eFiled