UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:19-CV-00708-GNS-CHL

KIMETTA SUBLETT                                                  PLAINTIFF

v.

MASONIC HOMES OF KENTUCKY, INC.                          DEFENDANT

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendant's Motion for Summary Judgment (DN 50) and Plaintiff's Motion to Exceed Page Limit (DN 56). The motions are ripe for adjudication. For the reasons stated below, the motions are **GRANTED**.

**I.    BACKGROUND**

Plaintiff Kimetta Sublett ("Sublett") is a former employee of Defendant Masonic Homes of Kentucky ("MHK"), which employs over 600 workers. (Whitaker Dep. 36:3, Aug. 26, 2020, DN 50-4). Sublett, who was born in 1960, began working for MHK in 1986 as a nurse aide at its Pillars Assisted Care Center ("Pillars"). (Sublett Dep. 10:3-5, Oct. 20, 2020, DN 50-2). Sublett received two promotions while working at Pillars, eventually reaching the position of Director. (Sublett Dep. 10:3-5).

In January 2017, Sublett had a lung scan performed which showed "moderate emphysema." (Sublett Aff. Attach. C, DN 57-1). A follow-up lung scan a year later reflected a progression of the condition. (Sublett Aff. ¶ 12, DN 57-1).[1] Sublett informed Paula Walker ("Walker") in Human Resources of her diagnosis and showed her the lung scan report. (Sublett

---

[1] The 2017 scan report is the only documented evidence of disability provided by Sublett. The scan results provide no limitations or restrictions on Sublett's abilities.

Aff. ¶ 12). Walker's supervisor was Trasee Whitaker ("Whitaker"), who oversaw HR, and Nick Cooper ("Cooper"), another administrator. (*See* Sublett Aff. ¶ 12). Sublett expected that Walker would tell Whitaker and Cooper about Sublett's condition, but Sublett did not communicate the diagnosis to Cooper or Whitaker. (*See* Sublett Aff. ¶ 12). Sublett also claims to have told CEO Gary Marsh ("Marsh") of her emphysema diagnosis to explain why she would not be participating in the yearly campus cleanup. (Sublett Aff. ¶ 14). According to Sublett, Marsh expressed that he was sorry to hear of her condition. (Sublett Aff. ¶ 14).

MHK's policies provide that a physician's statement may be needed to document a disability for which an employee is requesting an accommodation; the physician's statement needs to discuss the parameters of the disability and what limitations the employee may have. (Whitaker Dep. 62:8-11, 63:3-7). Managers receiving an accommodation request from an employee are required to meet with HR, which is noted in the managers' personnel file. (Whitaker Dep. 78:12-16). No notes were made in any manager's file regarding Sublett's condition.

Sublett states that once she told Walker of her diagnosis, she then made requests for accommodation for parking during construction which was being undertaken in 2017 to merge the Pillars facility with an assisted living facility called Grove Pointe. (Sublett Dep. 13:15-21; Whitaker Aff. ¶ 3, DN 50-3). Sublett did not park in the designated areas and had received tickets from building security. (Sublett Dep. 14:1-3). The head of security at Pillars became aware of the tickets and gave Sublett a sticker for her car that allowed her to park without being ticketed, which resolved the issue. (Sublett Dep. 14:11-14:21, 39:21-22).

The Pillars facility was ultimately subsumed into the Grove Pointe assisted living facility, which transformed Pillars to a "more clinical model." (Whitaker Dep. 98:1-10). The role of Director of Pillars eventually was combined into the Director of both the combined Pillars facility

and Grove Pointe. (Whitaker Dep. 98:4-10). To prepare for that role, Chris Just ("Just") was hired as the Associate Director of Pillars in February 2018 with the intention that he would become Director of the new facility once construction was completed. (Def.'s Mot. Summ. J. Ex. 6, DN 50-6; Whitaker Dep. 103:3-5). In December 2017, Sublett was promoted to the Resident Services Manager ("RMS") at another MHK facility, Miralea, and her salary increased from $65,000 to $75,000. (Sublett Aff. ¶¶ 18, 21). The outgoing Resident Services Manager ("RSM") at Miralea who was promoted to Director of that facility, Mike Truax ("Truax"), had been earning $97,000 per year. (Sublett Aff. ¶ 21). In early 2018, Sublett assumed the RSM role at Miralea, helping residents transition to living in the facility. (*See* Truax Dep. 139:18-19, 141:16-24, Aug. 28, 2020, DN 57-3). Sublett sent an email to CEO J. Scott Judy ("Judy") and Marsh thanking them for the opportunity.

The crux of Sublett's failure-to-accommodate claim rests on the arrangements at the Miralea facility. Truax told Sublett where to park and through which door to enter the facility. (Sublett Dep. 33:23-34:3). Walking longer distances from the parking lot to the facility door was difficult for Sublett. (Sublett Aff. ¶ 31). Her parking sticker had expired, but Sublett says that she did not try to get it renewed because she did not "want to rock the boat" by asking for renewal. (Sublett Dep. 33:17-19, 34:22-35:8). Sublett testified that Truax told her to park near his truck in the employee overflow lot and that she could use her badge to get into a door closer to the lot. (Sublet Dep. 35:14-20). Sublett's badge did not work on the door when she tried to use it, at which point she "took it upon [herself] to find a parking space near the door . . . ." (Sublett Dep. 35:20-24). After that, she parked in the employee lot. (Sublett Dep. 36:10-23).

Although Sublett mentioned her emphysema to Truax, he testified that Sublett primarily discussed her doctor advising her to get more exercise and change her diet. (Truax Dep. 172:5-

3

15).  Truax stated that he did not know how emphysema affects individuals other than being a disease of the lungs. (Truax Dep. 168:11, 169:3-4).  Truax recalled Sublett's request to be removed from helping in the cafeteria on a voluntary basis, saying it was "too hard," but Sublett did not indicate the request was due to any illness. (Truax Dep. 171:8-24).  Thereafter, Sublett was not asked to help with serving meals. (Sublett Dep. 40:20-41:8).

In May 2018, MHK began experiencing several instances of performance and behavior issues with Sublett.  Truax told Sublett he received a complaint that she had used the term, "hoochies," a derogatory term for women, although Sublett claimed she said "hucha," which is Spanish for money. (*see* Sublett Aff. ¶ 44).  Truax subsequently received a complaint that Sublett had disclosed confidential HIPAA information about a resident over the phone, which she denied. (Truax Dep. 160:9-13; Sublett Aff. ¶ 45).  The final instance came when it was reported that Sublett called a co-worker "a little shit" within earshot of residents and guests. (Truax Dep. 191:8-24).

As a result of these incidents, Truax formulated a Performance Improvement Plan ("PIP") for Sublett which addressed communication and respect, along with coaching sessions. (Truax Dep. 180:15-19).  On July 24, 2018, Truax and Brandi Muir ("Muir"), an office manager, met with Sublett to discuss the PIP. (Truax Dep. 180:1-5).  Sublett denied the allegations of performance issues and refused to agree to the PIP. (Sublett Aff. ¶ 54).  Truax characterized Sublett as "hostile" and noted that she refused to even look at the PIP. (Truax Dep. 178:16-21, 180:1-6).  Sublett denies any hostility but asserts that she was "quiet, hurt, and tearful." (Sublett Aff. ¶ 54).  At the end of this meeting, Truax agreed to reconvene the next day in order to give Sublett time to "cool off". (Truax Dep. 177:23-178:1, 180:5-9).  Truax, Muir, and Whitaker met with Sublett the next day to revisit the PIP.  Sublett again declined to sign and accept the PIP and told Truax, "Mike, you have to do what directors do, which means you have to make the decision." (Sublett Dep.

52:8-11). After asking Sublett to leave the room, Truax decided to terminate her for insubordination and for refusing to participate with the PIP. (Truax Dep. 179:9-181:14).

Sublett filed this action in Jefferson Circuit Court (Kentucky), which was subsequently removed to this Court. (Notice Removal 2, DN 1). In her Complaint, Sublett has asserted claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, and the Kentucky Civil Rights Act ("KCRA"), KRS Chapter 344. (Compl. ¶¶ 26-52, DN 1-1). Following discovery, MHK has moved for summary judgment on Sublett's claims. In addition, Sublett has moved for leave to exceed the page limitation of LR 7.1(d). The motions are ripe for decision.

## II. JURISDICTION

This Court has subject-matter jurisdiction of this matter based upon federal question jurisdiction. *See* 28 U.S.C. § 1331. In addition, the Court has supplemental jurisdiction over Sublett's state law claims. *See* 28 U.S.C. § 1367(a).

## III. DISCUSSION

### A. Defendant's Motion for Summary Judgment

MHK moves for summary judgment on all of Sublett's claims. Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] party moving for summary judgment may satisfy its burden [by showing] that there are no genuine issues of material fact simply 'by pointing out to the court that the [non-moving party], having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.'" *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005) (quoting *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989)). Similarly, the movant may meet its burden by offering

5

evidence negating an essential element of the non-moving party's claim. *See Dixon v. United States*, 178 F.3d 1294, 1999 WL 196498, at *3 (6th Cir. 1999).

After the movant either shows "that there is an absence of evidence to support the nonmoving party's case," or affirmatively negates an essential element of the non-moving party's claims, the non-moving party must identify admissible evidence that creates a dispute of fact for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). While the Court must view the evidence in a light most favorable to the non-moving party, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

1. ***ADA/KCRA Discrimination Claim***

Sublett alleges that MHK discriminated against her on the basis of her disability.[2] To prove a claim of disability discrimination, a plaintiff may rely upon direct or circumstantial evidence. *See Johnson v. Kroger Co.*, 319 F.3d 858, 864-65 (6th Cir. 2003). In the absence of direct evidence—which does not exist in this case—a plaintiff may rely upon circumstantial evidence to prove a claim based upon the burden-shifting articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under that framework, Sublett bears the initial burden of proving a *prima facie* case of disability discrimination. *See Demyanovich v. Cadon Plating & Coatings, LLC*, 747

---

[2] Because Kentucky courts have construed in the KCRA in accordance with federal law and relied on federal case law in interpreting the KCRA, the Court will discuss the alleged violations of the together. *See Howard Baer, Inc. v. Schave*, 127 S.W.3d 589, 592 (Ky. 2003) ("The Kentucky Civil Rights Act was modeled after federal law, and our courts have interpreted the Kentucky Act consistently therewith." (citations omitted)).

F.3d 419, 433 (6th Cir.2014). If she meets that burden, MHK must prove a legitimate, nondiscriminatory reason for any adverse employment action. *See Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 310 (6th Cir. 2000) (citation omitted). If MHK meets its burden, Sublett bears the ultimate burden of proving pretext. *See id*.

a. *Prima Facie* Case

The Sixth Circuit has explained the requirements of proving a *prima facie* case of disability discrimination as follows:

> [A] plaintiff must show that: (1) he or she is disabled; (2) otherwise qualified for the position, with or without reasonable accommodation; (3) suffered an adverse employment decision; (4) the employer knew or had reason to know of the plaintiff's disability; and (5) the position remained open while the employer sought other applicants or the disabled individual was replaced.

*Tennial v. United Parcel Serv., Inc.*, 840 F.3d 292, 306 (6th Cir. 2016) (quoting *Whitfield v. Tennessee*, 639 F.3d 253, 258-59 (6th Cir. 2011)). Further, the disability must be a "but for" cause of the adverse employment action. *Id.* (quoting *Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 318 (6th Cir. 2012)). The two principal issues the parties disagree with under the *prima facie* case are whether Sublett met her burden to prove that she suffered an adverse employment decision and that MHK knew of her disability.

An adverse employment action is "a 'materially adverse change in the terms and conditions of a plaintiff's employment.'" *Deleon v. Kalamazoo Cty. Rd. Comm'n*, 739 F.3d 914, 918 (6th Cir. 2014) (citation omitted). "An employee's transfer may constitute a materially adverse employment action, even in the absence of a demotion or pay decrease, so long as the particular circumstances present give rise to some level of objective intolerability." *Id.* at 919. "A 'mere inconvenience or an alteration of job responsibilities' or a "bruised ego" is not sufficient to constitute an adverse employment action. *White v. Burlington N. & Santa Fe Ry. Co.*, 364 F.3d

7

789, 797 (6th Cir. 2004) (en banc) (quoting *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 886 (6th Cir. 1996)). A plaintiff's material job responsibilities need to have been negatively impacted significantly. *Mitchell v. Vanderbilt Univ.*, 389 F.3d 177, 182 (6th Cir. 2004). An employee's subjective opinion of the transfer, positive or negative, is not dispositive of employment actions classification as "adverse." *Deleon*, 739 F.3d at 921 (internal citations omitted). "A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 594 (6th Cir. 2007) (quoting *Ford v. Gen. Motors Corp.*, 305 F.3d 545, 553 (6th Cir. 2002)). The instances of adverse action in question are discussed below.

Sublett contends her transfer from the director position at Pillars facility to the RSM role at Miralea was an adverse employment action. It is uncontested, however, that the director position at Pillars was eliminated because that facility was merged into the new Grove Pointe operation. Rather than terminating Sublett, MHK transferred her to Miralea, a larger facility, in a different role. (Whitaker Dep. 99:8-11). There is no evidence in the record that Sublett's job responsibilities changed substantially in the transition from Director of Pillars to RSM of Miralea, other than having to answer to the Director at Miralea. (Sublett Aff. ¶ 18). Thus, Sublett has not shown that the transfer constituted an adverse employment action. *See Crady v. Liberty Nat'l Bank & Tr. Co. of Ind.*, 993 F.2d 132, 136 (7th Cir. 1993) ("[Plaintiff] would have maintained a management-level position at the same salary and benefits he was already receiving. Although his responsibilities changed, he does not show that they were less significant than the responsibilities he previously enjoyed in Sellersburg. Assuming that [Plaintiff] was an assistant vice president in Sellersburg

8

and that the collections officer position did not carry the AVP designation, this alone is not enough to constitute a materially adverse employment action.").

Besides the change in title with the transfer to Miralea, Sublett received a $10,000 increase in pay (from $65,000 to $70,000 annually). (Sublett Aff. ¶ 21; Whitaker Dep. 98:15-99:12; Truax Dep. 87:23-88:3). While Sublett may have been unhappy about the transfer, an employee's feelings regarding a transfer are largely irrelevant to the court's determination of adverse employment action. *See Campbell v. KY Spine & Rehab, PSC*, No. 3:12-CV-128-H, 2014 WL 1056553, at *6 (W.D. Ky. Mar. 19, 2014) ("Leaving Vignes's subjective perception to the side, no positive evidence supports that she was, in fact, demoted."); *see also Cole v. Wake Cty. Bd. of Educ.*, 494 F. Supp. 3d 338, 345-46 (E.D.N.C. 2020) ("[A]n employee's perception of the new position as a demotion is close to irrelevant." (citations omitted)); *Breaux v. City of Garland*, 205 F.3d 150, 160 (5th Cir. 2000) ("[A] plaintiff's subjective perception that a demotion has occurred is not enough to constitute an adverse employment decision." (internal quotation marks omitted) (citation omitted). Sublett's pay increase and consistent job duties reflect no adverse action despite her perception of a "a less distinguished title."

Sublett characterizes the meetings she had with Truax to discuss performance allegations as "discipline" so as to constitute an adverse employment action. Discipline can be considered an adverse employment action if it results in suspension for several days or when the suspension is without pay. *Rose v. Buckeye Telesystem, Inc.*, 181 F. Supp. 2d 772, 776 (N.D. Ohio 2001). Even written warnings are not considered adverse employment actions. *Williams v. AP Parts, Inc.*, 252 F. Supp. 2d 495, 498 (N.D. Ohio 2003). Sublett's counseling sessions with Truax never resulted in formal, written complaints or evaluations, nor did they end with suspension or punishment. The conversations therefore did not constitute adverse employment actions.

Termination would constitute an adverse employment action. The Sixth Circuit has held that "ultimate employment decisions" such as terminations and demotions are adverse. *Michael*, 496 F.3d at 594 (quoting *White*, 364 F.3d at 801). Sublett therefore has satisfied her burden of establishing an "adverse employment action" in the *prima facie* claim through her termination.

An employee is not fired as a result of her disability if the decisionmaker who fired the employee was unaware of the disability—"on notice" is not sufficient. *Nilles v. Givaudan Flavors Corp.*, 521 F. App'x 364, 368 (6th Cir. 2013); *see Moloney v. Home Depot U.S.A., Inc.*, No. 11-10924, 2013 WL 460684, at *1 (E.D. Mich. Feb. 7, 2013) (holding that the singular person who made the decision to fire the plaintiff is the person whose knowledge is relevant to the claim of discrimination); *see also Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1185 (11th Cir. 2005) (the decisionmaker needs *actual* notice of the plaintiff's disability to prove an ADA claim). Even if the decisionmaker has a general knowledge that a disability exists, "[a] *prima facie* case is not made out if they are unaware of the specifics of an employee's disability or restrictions . . . ." *Tennial*, 840 F.3d at 306 (citation omitted).

In *Nilles v. Givaudan Flavors Corp.*, the Sixth Circuit denied recovery to the plaintiff because only one human resources professional was told of the employee's disability without instruction to disclose to upper management. *Nilles*, 521 F. App'x at 368; *see Brown v. City of Franklin*, 430 F. App'x 382, 386 (6th Cir. 2011) ("[The plaintiff] . . . contend[s] that human resources 'must have told' [the decisionmaker] of [the plaintiff's] statements. This, however, is pure speculation . . . ."); *Brown v. BKW Drywall Supply, Inc.*, 305 F. Supp. 2d 814, 829 (S.D. Ohio 2004) ("Knowing that an employee has health problems, however, is not the same as knowing that the employee suffers from a disability." (citation omitted)). "[T]he employer must know enough about the employee's condition to conclude that [he or she] is disabled." *Bradford v. Prosoft, LLC*,

10

No. 3:16-CV-00373-CRS-DW, 2017 WL 1458201, at *5 (W.D. Ky. Apr. 24, 2017) (internal quotation marks omitted) (quoting *Cady v. Remington Arms Co.*, 665 F. App'x 413, 417 (6th Cir. 2016)).

It is unclear whether Truax, who made the decision to fire Sublett, was aware that she was disabled. In this regard, MHK contends that Sublett's affidavit directly and indirectly contradicts part of her sworn deposition testimony. (*see* Def.'s Reply Mot. Summ. J. 1-4). Sublett's post-deposition affidavit asserts that she had explicitly communicated to Truax that she was disabled, but "a party may not create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts her earlier deposition testimony." *Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986) (citing *Biechele v. Cedar Point, Inc.*, 747 F.2d 209, 215 (6th Cir. 1984)). If there is no direct contradiction, "the district court should not strike or disregard th[e] affidavit unless the court determines that the affidavit 'constitutes an attempt to create a sham fact issue." *Reich v. City of Elizabethtown*, 945 F.3d 968, 976 (6th Cir. 2019) (alteration in original) (citation omitted). Sublett claims by affidavit that she told Truax of her disability and her limitations. (Sublett Aff. ¶¶ 31-42). MHK cited to no testimony from Sublett's deposition contradicting her affidavit regarding her reports of her disability to Truax, so for the purpose of this motion, Sublett has established that Truax was aware of her claimed disability.

### b.     Legitimate, Nondiscriminatory Reason

Because Sublett established a *prima facie* case, the burden then shifts to MHK to present a legitimate nondiscriminatory reason for her termination. *See Parry*, 236 F.3d at 310 (citation omitted). MHK has presented evidence that it fired Sublett for insubordination after she refused to sign the PIP. (Truax Dep. 181:2-14). The Sixth Circuit has "repeatedly held that

insubordination may constitute a legitimate, nondiscriminatory reason for adverse action." *Fullen v. City of Columbus*, 514 F. App'x 601, 606 (6th Cir. 2013). Thus, MHK has met its burden.

### c. Pretext

Finally, Sublett has the ultimate burden of proving pretext. *See id.* She may establish pretext in three ways: "'(1) that the proffered reason[] had no basis in fact, (2) that the proffered reason[] did not actually motivate the employer's action, or (3) that [the reason was] insufficient to motivate the employer's action.'" *Romans v. Mich. Dep't of Human Servs.*, 668 F.3d 826, 839 (6th Cir. 2012) (citation omitted).

> The ultimate question is whether the employer intentionally discriminated, and proof that "the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason . . . is correct." In other words, "[i]t is not enough . . . to disbelieve the employer; the factfinder must believe the plaintiff's explanation of intentional discrimination."

*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 146-47 (2000) (internal citation omitted) (citation omitted).

Sublett asserts that she has met her burden as to her termination because she disputed using the profanity or violating HIPAA, MHK conducted an inadequate investigation, MHK lacked documentation required by its policies, and there were inconsistencies in witness statements. (Pl.'s Resp. Def.'s Mot. Summ. J. 25-28). Sublett's disagreement with the events leading up to her termination is not enough to meet her burden. As the Sixth Circuit has noted:

> If an employer has an "honest belief" in the nondiscriminatory basis upon which it has made its employment decision (i.e. the adverse action), then the employee will not be able to establish pretext. As we have stated, "[w]hen an employer reasonably and honestly relies on particularized facts in making an employment decision, it is entitled to summary judgment on pretext even if its conclusion is later shown to be 'mistaken, foolish, trivial, or baseless.'"

*Tingle v. Arbors at Hilliard*, 692 F.3d 523, 530-31 (6th Cir. 2012) (internal citation omitted) (citation omitted). Sublett has not presented sufficient evidence that MHK did not honestly believe

the reports it received about her alleged misconduct. More importantly, Sublett did not dispute that she was presented with the PIP and refused to sign it.

Likewise, Sublett's criticisms of MHK's investigation and documentation are insufficient to meet her burden in this case. As the Sixth Circuit noted, "we do not require that the decisional process used by the employer be optimal or that it left no stone unturned." *Tingle*, 692 F.3d at 531 (citation omitted). It is improper for courts to serve as a super-personnel board to second-guess the wisdom decisions made by management. *See Smith v. Leggett Wire Co.*, 220 F.3d 752, 763 (6th Cir. 2000) ("[I]t is inappropriate for the judiciary to substitute its judgment for that of management." (citations omitted)).

Finally, Sublett's characterization of the witnesses' testimony as being favorable to her are insufficient. "A plaintiff facing a summary judgment motion cannot 'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion." *Tingle*, 692 F.3d at 533 (citation omitted).

For these reasons, Sublett has failed to meet her burden of proving pretext, and MHK is entitled to summary judgment on her disability discrimination claim.

### 2. *ADA/KCRA Failure to Accommodate Claim*

In addition to Sublett's disability discrimination claim, she also asserts a claim for failure to accommodate her disability. In order to establish a *prima facie* failure to accommodate claim, Sublett must show that: (1) she has a disability; (2) she is otherwise qualified for the position, with or without reasonable accommodation; (3) MHK knew or had reason to know about her disability; (4) she requested an accommodation; and (5) MHK failed to provide the necessary accommodation. *Myers*, 182 F. App'x at 515 (citing *DiCarlo*, 358 F.3d at 419).

To make out a claim for the denial of a reasonable accommodation, an employee must first show that he or she proposed an accommodation and that the desired accommodation is objectively reasonable. *Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1108 (6th Cir. 2008). Employees must not only "request to be accommodated, but [must] also provide their employers with a sufficient basis to understand that the request is being made because of their disability." *Deister v. Auto Club Ins. Ass'n*, 647 F. App'x 652, 658 (6th Cir. 2016) (citation omitted). A plaintiff must explain his or her disability and how the accommodation may help. *Id.*; *Shreve v. City of Romulus*, 742 F. App'x 97, 103 (6th Cir. 2018) (holding that failing to accommodate an employee's *known* disability amounts to unlawful discrimination) (citing *Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 201 (6th Cir. 2010)).

Sublett alleges two instances of failure to accommodate: First, with respect to parking and, second, with helping serve residents meals at Miralea. With regard to parking, however, Sublett testified that she requested and received a parking pass at Pillars, which resolved this issue. (Sublett Dep. 39:20-22). Sublett further testified that when she was transferred to Miralea, she then parked in a vacant resident's space but Truax indicated that she should move her car. (Sublett Dep. 35:9-36:23). She testified she was able to find parking in the employee lot from that point on.[3] (Sublett Dep. 36:15-23). Regarding the duties related to helping serve meals, Sublett was

---

[3] Specifically, Sublett testified that on her first day at Miralea, Truax told her initially to park in the overflow lot where he parked his truck. (Sublett Dep. 33:19-34:3, 35:9-17). Although her parking sticker from Pillars had expired, Sublett testified that she did not want "rock the boat" by asking for a new sticker. (Sublett Dep. 33:4-9, 34:4-25). According to Sublett, while Truax said that her badge would allow her to enter the door closest to that lot, her badge would not work, although she did not indicate whether she ever alerted Truax about this problem. (Sublett Dep. 35:9-21). Sublett then used the vacant resident's parking spot, and Truax told her she would have to park elsewhere if someone moved into the associated apartment. (Sublett Dep. 35:23-36:6). Sublett stated from that point on, she was able to find a spot in the regular parking lot. (Sublett Dep. 36:15-23). There is no indication in the record that Sublett communicated any further issue to MHK that she had problems using the employee parking lot.

relieved of those duties after reporting to Truax her difficulty with that activity. (Sublett Dep. 40:20-41:8). Sublett testified that after she told Truax that she could not perform that task anymore, she was excused from helping serve meals. (Sublett 41:6-8 ("Q: And did you have to do that anymore after you told [Truax] you couldn't do it anymore? A: No, sir.")).

In her affidavit, Sublett raises issues generally about accommodation requests which were denied for tasks "like rearranging furniture" and activities related to serving meals and says that Truax *did not* relieve her of those responsibilities. (Sublett Aff. ¶¶ 39-41). To the extent the affidavit contradicts Sublett's deposition testimony, it will be disregarded. *See Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986) ("A party may not create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts her earlier deposition testimony." (citation omitted)). Sublett was specifically asked in her deposition about any job duties at Miralea which she was unable to handle. She identified only the tasks related to serving meals and testified that she was accommodated in that regard. Under these facts, her failure to accommodate claim fails.

Regarding her failure to accommodate claim, Sublett asserts that MHK failed to engage in the interactive process to discuss disability related accommodations. However, this argument is moot as there can be no failure to engage in the interactive process if there were no accommodations requested. Sublett admits that her request to be relieved from serving in the cafeteria was immediately accommodated. With respect to parking, there is no indication that Sublett ever told Truax or anyone else at MHK that she needed further accommodations after she began parking in the employee lot. "[F]ailure to engage in the interactive process is only an independent violation of the ADA if the plaintiff establishes a *prima facie* showing that he proposed a reasonable accommodation." *Anderson v. Gen. Motors, LLC*, 45 F. Supp. 3d 662, 677

15

(E.D. Mich. 2014) (internal quotation marks omitted) (citation omitted). To assert failure to engage in the interactive process, Sublett would need to show that she requested a reasonable accommodation, which MHK failed to provide. *Thompson v. Fresh Prod., LLC*, No. 20-3060, 2021 WL 139685, at *11 (6th Cir. Jan. 15, 2021) (citing *Johnson v. Cleveland City Sch. Dist.*, 443 F. App'x 974, 983 (6th Cir. 2011)). Sublett's main argument is that documentation was never requested from her after she made reference to her emphysema. (Pl.'s Resp. Def.'s Mot. Summ. J. 30). As has been addressed above, there is no evidence to support a finding that she requested accommodations which were not provided.

Thus, Sublett has failed to meet her burden to prove her failure-to-accommodate claim. The Court will grant summary judgment on this claim.

### 3. *KCRA Age Discrimination Claim*

Sublett has alleged that MHK discriminated against her based upon her age with respect to her pay in comparison to Truax and Just. Sublett was paid less than other directors in the MHK organization, as well as paid less than the predecessor in her position as RSM at Miralea. (Sublett Aff. ¶ 21). Because Sublett lacks direct evidence, she must satisfy the burden shifting test of *McDonnell Douglas Corp.* to prove her age discrimination claim. *See Williams v. Wal-Mart Stores, Inc.*, 184 S.W.3d 492, 495 (Ky. 2005) (citation omitted). To establish a claim for age discrimination, Sublett must prove: (1) she is in a protected class; (2) subjected to adverse employment action; (3) she was otherwise qualified for the position; and (4) she was replaced by a significantly younger worker. *See Hardin*, 558 S.W.3d at 9. Bare evidence that the Sublett was replaced with a younger worker is not sufficient to establish a claim of age discrimination, even if the *prima facie* case is met. *See Chappell v. GTE Prod. Corp.*, 803 F.2d 261, 267 (6th Cir. 1986) (holding that "[t]he isolated fact that a younger person eventually replaces an older employee is

not enough to permit a rebuttal inference that the replacement was motivated by age discrimination." (citation omitted)); *see Cuddy v. Carmen*, 694 F.2d 853, 859 (D.C. Cir. 1982) (concluding that the employer met its burden of proof to rebut age discrimination claim by establishing that younger replacement worker was sufficiently qualified to assume the employee's former position); *Harker v. Fed. Land Bank of Louisville*, 679 S.W.2d 226, 229 (Ky. 1984) (stating that a plaintiff must present "proof of cold hard facts creating an inference showing age discrimination was a determining factor in the discharge." (internal quotation marks omitted)).

MHK argues that Sublett has failed to articulate any similarly situated employees who were treated more favorably. (Def.'s Mot. Summ. J. 18, DN 50). For purposes of age discrimination, the "similarly-situated" persons "with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992) (citations omitted); see also Hill v. Nicholson, 383 F. App'x 503, 509 (6th Cir. 2010) ("For a plaintiff to show that a non-protected employee is similarly situated, he must "prove that all of the *relevant* aspects of his employment situation were nearly identical to those of [the non-minority's] employment situation." (alteration in original) (citation omitted)). To support her claim, Sublett has only shown that she was paid less than other RSMs or directors, but has otherwise not provided any factual evidence to assert that those workers are similarly situated in the behavior they engaged in or who their direct reports are. (*See* Pl.'s Resp. Def.'s Mot. Summ. J. 33). In fact, Sublett makes absolutely no effort to show she was similarly situated to Truax or Just with respect to their ages, education, or work experience. *See Fannin v. Read*, No. 03-417-JBC, 2005 WL 8164820, at *2 (E.D. Ky. Oct. 31, 2005) (granting summary judgment on the

plaintiff's discrimination claim because he failed to show that he was similarly situated to the compared employees); *Frazier v. Ford Motor Co.*, No. 3:98-CV-254-H, 2001 WL 1689816, at *3 (W.D. Ky. Nov. 8, 2001) (granting summary judgment and noting that the plaintiff failed "to produce evidence that compared to other similarly situated employees, he has lost overtime work."); *Vaughn v. Louisville Water Co.*, No. 3:03CV-541-S, 2007 WL 2746669, at *6 (W.D. Ky. Sept. 18, 2007) ("[A] disparity in pay has not been shown between Vaughn and any similarly situated male employee. She simply cannot compare the positions of process owner and administrator to support her claim.").

When Sublett was moved to the Miralea facility, she believed it was due to her age, but did not communicate that belief to Marsh and Judy, who made the decision. (Sublett Dep. 26:23-25, 27:1). Sublett's age discrimination case can meet the prima facie elements, but her claims are based primarily on her own theories. However, "conclusory allegations and subjective beliefs" are insufficient to establish a claim for discrimination. *Mitchell*, 964 F.2d at 584-85. Sublett does not have sufficient evidence to rebut MHK's proffered reasoning for her termination and lower pay compared to Truax or and Just, or anyone else for that matter: Truax's experience outmatched Sublett's and corresponded to greater pay. (Def.'s Reply Mot. Summ. J. 8, DN 62). Furthermore, Just, who was made Director of the consolidated Grove Pointe facilities, received greater pay because he was responsible for two facilities after Pillars merged into the new Grove Pointe facility. (Def.'s Reply Mot. Summ. J. 9). As in *Chappell*, the remaining assertion that replacement with a younger employee raises an inference of age discrimination is simply insufficient for Sublett to succeed. *See Chappell*, 803 F.2d at 267. In fact, Sublett fails to point to any proof in the record regarding Just's or Truax's ages in comparison to her own. Similarly, the same reasoning proffered by MHK against disability discrimination applies to the age discrimination claim. Sublett's refusal

to participate in the PIP as proposed by MHK justified its termination of Sublett, and she has not presented evidence of pretext sufficient to overcome MHK's motion for summary judgment. Summary judgment will be granted on this claim.

### 4. *ADA/KCRA Retaliation Claims*

Finally, MHK asserts that it is entitled to summary judgment on Sublett's retaliation claims. To prove a *prima facie* case of retaliation, the plaintiff must show that: "(1) the plaintiff engaged in protected activity; (2) the employer knew of that activity; (3) the employer took an adverse employment action against the plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action." *Rorrer*, 743 F.3d at 1046.

In moving for summary judgment, MHK contends that Sublett cannot satisfy the first element of the *prima facie* case. (Def.'s Mot. Summ. J. 19). Sublett claims she engaged in protected activity by "requesting accommodation for her disability" and through "complaints about [MHK's] failure to accommodate her disability and discriminatory treatment, including her demotion." (Compl. ¶ 45). As this Court has noted, "[a] request for an accommodation of a disability qualifies as protected activity . . . ." *King v. Custom Resins, Inc.*, No. 4:17-CV-00150-JHM, 2019 U.S. Dist. LEXIS 84133, at *13 (W.D. Ky. May 20, 2019) (citing *Baker v. Windsor Republic Doors*, 414 F. App'x 764, 777 n.8 (6th Cir. 2011)). As discussed previously, however, Sublett did not request disability accommodations which were not provided. Furthermore, the record does not support any claims that Sublett complained to MHK that it failed to engage in the accommodation process or that she believed she was being discriminated against prior to her termination.

Finally, mere temporal proximity between the alleged protected conduct and adverse employment action is not sufficient to establish retaliation, "where some time elapses between

19

when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality." *Sharp v. Waste Mgmt., Inc.*, 47 F. Supp. 3d 584, 601 (S.D. Ohio 2014) (quoting *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008)). However, this temporal proximity is only relevant once Plaintiff can establish that Defendant's legitimate reasons for the adverse employment action are pretextual. *Id.*

For these reasons, Sublett's retaliation claim fails. MHK is entitled to summary judgment on this claim.

### B. Plaintiff's Motion to Exceed Page Limit

Sublett moves for leave to file a response to MHK's motion in excess of the page limitation imposed by LR 7.1(d). MHK does not oppose Sublett's motion. The Court will grant this motion.

### IV. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** as follows:

1. Defendant's Motion for Summary (DN 50) is **GRANTED**, and Plaintiff's claims are **DISMISSED WITH PREJUDICE**.

2. Plaintiff's Motion to Exceed Page Limit (DN 56) is **GRANTED**.

3. The Clerk shall strike this matter from the active docket.

Greg N. Stivers, Chief Judge
United States District Court

September 30, 2021

cc: counsel of record